# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

ANTHONY C. HUBBARD,                   :

                Plaintiff,

      -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.         :

Case No. 3:08-cv-073

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6ᵗʰ Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on May 2, 2006, alleging disability since March 22, 2006, due to back and neck problems, stiff leg, foot and hand tremors. (Tr. 74-76, 92). Plaintiff's application was denied initially and on reconsideration. (Tr.59-68). A hearing was held before Administrative Law Judge David A. Redmond, (Tr. 42-58), who determined that Plaintiff is not disabled. (Tr. 30-41). The Appeals Council denied Plaintiff's request for review, (Tr. 2-3), and Judge Redmond's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Redmond found that Plaintiff meets the insured status requirements of the Act through December 31, 2011. (Tr. 35, ¶ 1). Judge Redmond also found that Plaintiff has severe vertebrogenic disorder of the cervical spine with residuals of surgery, degenerative disc disease and degenerative joint disease of the lumbar spine,

and a history of right hand tremor, (*Id.*, ¶ 3), but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 36, ¶ 4). Judge Redmond found further that Plaintiff has the residual functional capacity to perform a limited range of light work. (*Id.*, finding 5). Judge Redmond then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 40, ¶ 10). Judge Redmond concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 41, ¶ 11).

Dr. Peterangelo has been Plaintiff's treating physician since at least 1988. (Tr. 242-74). On July 6, 2000, Dr. Peterangelo noted that Plaintiff of chronic right leg pain and weakness for the past year, that his leg and hip weakness began in February, 1999, following an injury as a police officer while chasing a perpetrator, and that Plaintiff also complained of some right-sided tightness of the quadriceps and abductor muscles. *Id.* Dr. Peterangelo reported that examination revealed fair strength and range of motion, normal flexion and extension with no weakness, that when Plaintiff was in the standing position and lifted the right leg, he did exhibit a little tremor and tended to toe out. *Id.* Lumbar spine x-rays revealed mild cortical irregularity noted along the anterior superior margin of the third lumbar vertebral body consistent with congenital variation or fracture of indeterminate age. *Id.* Dr. Peterangelo assessed Plaintiff with subjective complaints of right hip and leg tremor, weakness. *Id.* On October 5, 2002, Dr. Peterangelo reported that Plaintiff still had no strength in his right leg, but he had no lower back pain, and that he was having pain in addition to the previous weakness localized to the right quadriceps. *Id.* Plaintiff saw Dr. Peterangelo again on December 26, 2003, at which time his diagnosis was identified as anxiety with panic attacks. *Id.*

Plaintiff again sought treatment from Dr. Peterangelo on March 30, 2005, April 20, 2005, April 4, 2006, and July 11, 2006. *Id.*

Plaintiff received treatment from Dr. Clark, a chiropractor, from March 24, 2003, to December 4, 2003, for complaints of right lower back pain and posterior leg pain extending to the mid thigh and tingling in the posterior lateral lower leg. (Tr. 169-178). On September 5, 2006, Dr. Clark reported that she had treated Plaintiff conservatively with intermittent improvement, that she last saw Plaintiff on December 4, 2003, at which time she noted that Plaintiff's low back had improved since he had been off work and that Plaintiff wanted to return to work on December 8, 2003. *Id.*

An MRI of Plaintiff's lumbar spine performed on October 7, 2003, revealed congenital canal stenosis, mild degenerative changes , and significant stenosis at L2-L3. (Tr. 180-81).

An April 18, 2005, EMG revealed right S1 spinal nerveroot injury (right S1 radiculopathy, chronic). (Tr. 222).

Plaintiff consulted with neurologist Dr. Svetic on June 15, 2005, at which time Dr. Svetic noted that Plaintiff reported pain with gait problems over the last year, stiffness in his right leg with some weakness, that the right leg problems started four (4) years ago, for the last year the stiffness has been constant, there was some tremor in the right leg over the last year, some tremor in the right leg over the last six (6) months, and some mild back pain. (Tr. 231-32). Dr. Svetic also noted that Plaintiff's sensory exam was normal, there was mild left eye ptosis, the motor exam was 5/5 except the right leg which was 4+/5, that tone was increased in the right leg more than the left, and that Plaintiff had right heel to shin difficulties due to leg weakness. *Id.* Dr. Svetic reported that

Plaintiff's gait exhibited right leg circumduction, his reflexes were normal in the upper extremities and knees, sustained clonus in the right ankle, and that there was no clonus in the left ankle. *Id.* Dr. Svetic also reported that the findings were consistent with an upper motor neuron lesion. *Id.*

On October 26, 2005, Dr. Svetic essentially reported that Plaintiff's physical examination was unchanged, that an MRI of the cervical spine showed a large disc herniation oat C5-6 significantly compression the cord. (Tr. 230).

Plaintiff began receiving treatment from neurosurgeon Dr. West in December, 2005. (Tr. 209-22). Dr. West initially determined that Plaintiff had congenital stenosis at multiple levels of the lumbar region and right foot clonus. *Id.* Dr. West subsequently determined that Plaintiff had a large disc herniation at C5-6 with significant cord compression and myopathic changes. *Id.* On December 27, 2005, Plaintiff underwent a microscopic anterior cervical discectomy with allograft fusion of the C5-6 level which Dr. West performed. (Tr. 191-206). Subsequently, Dr. West noted that Plaintiff was doing extremely well. (Tr. 214).

Plaintiff sought emergency room treatment on March 25, 2006, for complaints of "flare-up of his chronic low back pain with some radiculopathy down his right leg as well as a flare-up of his lower cervical spine pain where he had surgery for a disk in December 2005." (Tr. 207-08.). Plaintiff's examination revealed no pain to palpation of his posterior cervical spine, no increased pain to deep palpation of the thoracic or lumbar spine, some pain over the right IS area, and neurovascularly intact extremities. *Id.* Plaintiff "was requesting time off his job until he sees Scott West, DO in several days". *Id.* Plaintiff was treated with medications, given a release to be off work until March 29, 2006, or when cleared by Dr. West, and discharged. *Id.*

Dr. West noted on March 29, 2006, that Plaintiff reported that he had been doing very

well until he returned to work on January 26, 2006, that he has had posterior cervical pain as well as headache, and that some of the pain radiates into his right shoulder. (Tr. 212). Dr. West also noted that a lateral c-spine x-ray revealed evidence of a solid fusion, that he was not sure why Plaintiff was having the complained-of pain. *Id.* Dr. West recommended a repeat MRI which Plaintiff decided to postpone. *Id.*

In May, 2006, Dr. West reported that he last saw Plaintiff on March 29, 2006, that Plaintiff's diagnosis was herniated cervical disc, status post cervical discectomy with fusion at C5-6, and that "due to liability purposes, [he did] not feel comfortable saying [Plaintiff] can work." (Tr. 201-11).

Plaintiff consulted with neurologist Dr. Schoonover on May 3, 2006, at which time Dr. Schoonover noted that Plaintiff had a decreased cervical range of motion more so with rotation to the left than to the right, a mild dorsiflexion weakness in the right lower extremity, discomfort with hip flexion, an antalgic gait, and increased deep tendon reflexes in the lower extremities. (Tr. 226-28). Dr. Schoonover also noted that Plaintiff had some tremor at times in the right leg, and normal sensory exam. *Id.* Dr. Schoonover reported that Plaintiff had a chronic problem, that treatment would be supportive, and that there was no need for Plaintiff to follow-up with Dr. Schoonover. *Id.*

Plaintiff essentially alleges in his Statement of Specific Errors that the Commissioner erred by failing to find that he satisfies Listing 1.02 and 1.04 and by failing to find that he is disabled based on Drs. West's and Peterangelo's opinions that he is disabled. (Doc. 9).

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed

impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing).  It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

In determining that Plaintiff does not satisfy the Listings, Judge Redmond found that Plaintiff's alleged cervical and lumbar impairments do not cause significant loss of neurological function and do not prevent effective ambulation or the ability to sustain gross manipulation as required under the Listings.  (Tr. 36).

The Regulations read in part:

1.00 Musculoskeletal System
...
2. *How We Define Loss of Function in These Listings*

a. *General.* Regardless of the causes(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason ..., or the inability to perform fine and gross movements effectively on a sustained basis for any reason ... .

...

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00.

First, the Court notes that in support of his argument that he satisfies the Listings, Plaintiff relies on evidence which pre-dates his onset date by several years.  Nevertheless, while the evidence indicates that Plaintiff has an abnormal gait, there is absolutely no evidence in the record

that Plaintiff is unable to ambulate effectively on a sustained basis or that he is unable to perform fine and gross movements effectively on a sustained basis. In addition, the evidence reveals that Plaintiff's objective findings are, at worst, mild. That level of objective finding simply does not rise to the level of satisfying the Listings. The Commissioner did not err by failing to find that Plaintiff satisfies the Listings.

Plaintiff argues next that the Commissioner erred by failing to find that his is disabled because Dr. West and Dr. Peterangelo opined that he is disabled.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

As noted above, Dr. West reported in May, 2006, that for liability reasons, he did not "feel comfortable" stating that Plaintiff was able to work. In addition, when Dr. West last saw Plaintiff in March, 2006, he reported that he could find no reason for Plaintiff's alleged pain. Stated differently, Dr. West was not able to document any objective physical findings. Of course, in the absence of objective findings, the Commissioner is not bound by a treating physician's opinion that his patient is disabled.

Further, this Court's review of Dr. Peterangelo's records has failed to reveal that Dr.

Peterangelo opined that Plaintiff is disabled. Again, however, even assuming that Dr. Peterangelo did opine that Plaintiff is disabled, Dr. Peterangelo's contemporaneous office notes contain few objective findings that would support that opinion. Accordingly, the Commissioner would not be bound by such an opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 10, 2008.

s/ Michael R. Merz
United States Magistrate Judge

11

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (c), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).